[Crim. No. 33307. Second Dist., Div. Three. Mar. 28, 1979.]

THE PEOPLE, Plaintiff and Respondent, v.
HENRY SANCHEZ RAMIREZ, Defendant and Appellant.

COUNSEL

Patrick M. Thompson, under appointment by the Court of Appeal, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, Norman H. Sokolow and Howard J. Schwab, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

COBEY, Acting P. J.—Defendant, Henry Sanchez Ramirez, appeals from the judgment imposed following his conviction of involuntary

manslaughter.[1] (Pen. Code, § 192, subd. 2.) The appeal lies. (Pen. Code, § 1237, subd. 1.)

Defendant contends: (1) because the prosecution failed to establish the corpus delicti of involuntary manslaughter independently of his extrajudicial statements, the trial court erroneously denied his motion to set aside the information pursuant to Penal Code section 995 and also erroneously refused to order the entry of a judgment of acquittal after the prosecution's case in chief (see Pen. Code, § 1118); and (2) his conduct did not constitute the crime of involuntary manslaughter because he did not act with culpable, or criminal, negligence in handling the gun when it discharged and killed the victim. After examining the record and the applicable law we conclude that both contentions lack merit. We will, accordingly, affirm the judgment.

## FACTS[2]

Defendant and Manuel Corella played football at John Glenn High School in the City of Norwalk on Sunday, October 9, 1977. Defendant and Corella played on the same team, a team composed of players from the Camarelos gang or neighborhood, against the team from the Cantaranos gang or neighborhood.

After the football game Corella shot a shotgun "in the air," apparently as he walked toward the gate by the school gym, in the presence of defendant and several other persons.[3]

---

[1]The trial court found defendant "guilty as charged to sect(s) 192 P.C. . . ." Defendant had been charged with "the crime of MANSLAUGHTER, in violation of Section 192, . . . [in that he] did willfully and unlawfully, and without malice, kill . . . a human being." Penal Code section 192 prohibits and defines voluntary as well as involuntary manslaughter. The prosecutor's argument, the trial court's statement upon finding defendant guilty and the three-year sentence subsequently imposed clearly indicate that defendant was convicted of involuntary manslaughter. (See Pen. Code, §§ 192, subd. 2, and 193, subd. (b).)

[2]We state the facts in the light most favorable to the People as the prevailing party below. (*People* v. *Caudillo* (1978) 21 Cal.3d 562, 570-571 [146 Cal.Rptr. 859, 580 P.2d 274].)

[3]At trial, Monica Mendibles—Corella's girl friend—recalled that perhaps as many as five people were within four feet of Corella when he shot the gun, including defendant and Corella's brother, Rudy, and that twenty to thirty people were in the general area, some on the field, some near the gym, etc. A defense witness, Barney Ramirez, testified that he was on Corella's left-hand side as they walked out of the gates.

As Corella continued to walk with his companions, defendant asked Corella if he could shoot the gun. Shortly after Corella handed the gun back to defendant, it discharged and hit the back of Corella's head. According to the coroner's report, Corella died rapidly as a result of a gunshot wound located four inches behind and three inches above his right ear canal. The coroner opined that "[i]t is possible to self-inflict such a wound . . . ."

A "couple of days" after the shooting, Curt Gaxiola telephoned defendant "[t]o find out what was really going on."[4] Defendant told Curt that "he put a shell into the gun and he clicked it closed [and] it went off" and that the gun went off while he was holding it.

One day after the shooting (Oct. 10th) defendant came to the Los Angeles County Sheriff's station in Norwalk with a man named Jess Lowera. Grant Moltmann, a deputy sheriff, attempted to interview defendant after he advised him of his constitutional rights.[5] Defendant then explained that he understood his rights, that he had already contacted an attorney, and that his attorney had advised him not to say anything. On October 15, 1977, an attorney named Kalin called Deputy Moltmann. At approximately 3 p.m. on October 15, defendant met Deputy Moltmann at the Hall of Justice in the Sheriff's Homicide Bureau. Defendant arrived in the company of "a young lady . . . [that Moltmann thought defendant] said was his wife, and a man he introduced as attorney Kalin." Deputy Moltmann interviewed defendant in their presence; that interview was recorded and transcribed. During the interview defendant admitted that after the gun was handed to him, he broke it open, loaded it, and that it went off after he closed it.[6]

Defendant testified at trial and explained that he had asked Corella if he could shoot the gun once in order to get the gun away from Corella "so that nobody would get hurt because [defendant's] wife [was] from that

---

[4]Curt Gaxiola testified only at the preliminary hearing. At the preliminary hearing, defendant objected that Gaxiola's testimony regarding defendant's extrajudicial statements was inadmissible because the prosecution had failed to establish the corpus delicti independently of such statements.

[5]See *Miranda* v. *Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974].

[6]Defendant moved to exclude his statement on the ground that Deputy Moltmann had failed to elicit a waiver of defendant's constitutional rights on October 15, 1977, before their interview. We have augmented the record on appeal to include the tape and transcript of defendant's statement which were admitted as exhibits at trial. (Cal. Rules of Court, rule 12(a).) These establish the disputed waiver and the contents of the statement.

gang [Cantaranos]" and "[s]omebody would get hurt and they would take it out on [defendant] when [he] went over there, . . ." When he reached for the gun to get it from Corella, it went off, but he did not load the gun.

## DISCUSSION

### 1. *The Prosecution Established the Corpus Delicti Independently of Defendant's Extrajudicial Statements*

Defendant argues that the prosecution failed, both during the preliminary hearing and at trial, to establish the corpus delicti of manslaughter independently of his extrajudicial statements. We disagree. ■ It is true that the corpus delicti, i.e., the body or elements of a crime, must be established independently of the extrajudicial statements of the accused. The elements of the corpus delicti—(1) the injury or loss or harm and (2) a criminal agency which causes such injury, loss or harm—need only be proven by a "reasonable probability" (*People* v. *Cantrell* (1973) 8 Cal.3d 672, 679 [105 Cal.Rptr. 792, 504 P.2d 1256])[7] or, as otherwise stated, by slight or prima facie proof. (*People* v. *Mehaffey* (1948) 32 Cal.2d 535, 545 [197 P.2d 12].) But the prosecution need not establish the accused as the perpetrator of the offense (*People* v. *Wong* (1973) 35 Cal.App.3d 812, 838-839 [111 Cal.Rptr. 314]), and it may rely upon testimony of the accused as well as circumstantial evidence in meeting its burden. (*People* v. *Ditson* (1962) 57 Cal.2d 415, 445-446 [20 Cal.Rptr. 165, 369 P.2d 714].) Furthermore, the order of proof is discretionary (*People* v. *Amaya* (1952) 40 Cal.2d 70, 76 [251 P.2d 324]; *People* v. *Mehaffey, supra,* 32 Cal.2d at pp. 547-548), and a plausible noncriminal explanation of the event does not compel a finding of lack of criminal agency. (*People* v. *Jacobson* (1965) 63 Cal.2d 319, 327 [46 Cal.Rptr. 515, 405 P.2d 555]; *People* v. *Small* (1970) 7 Cal.App.3d 347, 354 [86 Cal.Rptr. 478], see also *People* v. *Wong, supra,* 35 Cal.App.3d at pp. 838-839.)

■ Applying these rules to the case before us, the prosecution was required to show that the victim's death was caused by some criminal agency. The prosecution did so at the preliminary hearing by introducing the coroner's report and the spontaneous statements of persons present at

---

[7]Our Supreme Court recently disapproved *People* v. *Cantrell, supra,* insofar as it "repeated the [*People* v. *Wells* (1949) 33 Cal.2d 330 (202 P.2d 53)] dictum barring evidence tending to prove insanity from admission at the guilt trial." (*People* v. *Wetmore* (1978) 22 Cal.3d 318, 322, 324, fn. 5 [149 Cal.Rptr. 265, 583 P.2d 1308].)

the shooting. (See Evid. Code, §§ 1240,[8] 402 and 405; *People* v. *Worthington* (1974) 38 Cal.App.3d 359, 366-367 [113 Cal.Rptr. 322]; see also *People* v. *Washington* (1969) 71 Cal.2d 1170, 1176-1177 [81 Cal.Rptr. 5, 459 P.2d 259, 39 A.L.R.3d 541].) Curt Gaxiola was at John Glenn High School when the shots that killed Corella discharged. He testified at the preliminary hearing that he heard the gunshot and "saw everybody running" and heard "[e]verybody screaming[,] saying that he shot him."

At trial, Monica Mendibles testified that she saw Corella give the gun to defendant, that defendant took and held the gun, that Corella and defendant continued walking, and that the gun went off while defendant was holding it.

The coroner's report was also admitted at trial. It contained the opinion that it was possible to self-inflict a wound such as that that caused Corella's death. But the trial court was free to accept the conflicting inference—inherent in Gaxiola's and Mendibles' testimony—that Corella had been shot by another. (See *People* v. *Jacobson, supra,* 63 Cal.2d at p. 327.) The corpus delicti was therefore established independently of defendant's extrajudicial statements.[9] As we will explain in the next section of this discussion, those statements and other evidence before the trial court established that defendant committed involuntary manslaughter by killing Corella during the commission of an unlawful act. (See Pen. Code, § 192, subd. 2.) Consequently we conclude that the trial court neither erred in denying the defense motion to set aside the information on the ground that "defendant had been committed without reasonable or probable cause" (Pen. Code, § 995), nor in denying the defense motion for an acquittal pursuant to Penal Code section 1118.

## 2. *The Evidence Before the Trial Court Established That Defendant Acted With Criminal Negligence in Committing the Unlawful Act and Killing Corella*

Defendant also contends that his conviction should be reversed because the evidence did not establish that he acted with criminal negligence. He relies upon Penal Code section 20 which makes the union

---

[8]Evidence Code section 1240 provides: "Evidence of a statement is not made inadmissible by the hearsay rule if the statement: (a) Purports to narrate, describe, or explain an act, condition, or event perceived by the declarant; and (b) Was made spontaneously while the declarant was under the stress of excitement caused by such perception."

[9]Because Gaxiola's and Mendibles' testimony establish by a reasonable probability that a criminal agency caused Corella's death, it is unnecessary to hold—as respondent urges we should—"that when an individual is shot to death by means of a sawed-off shotgun, that that alone is sufficient evidence for a corpus delicti, even where it is possible that the wound could have been self-inflicted."

of act and intent or criminal negligence an invariable element of every crime,[10] and upon Penal Code section 26's provision that certain persons are incapable of committing crimes, including those who commit an act by accident "when it appears that there was no evil design, intention or culpable negligence." (Pen. Code, § 26, subd. Six.) He contends that the trial court should have acquitted him because he only asked for Corella's gun "so that nobody would get hurt" and the gun discharged accidentally.

We disagree. The trial court's comments indicate that it found that the defendant involuntarily killed Corella "in the commission of an unlawful act, . . ." (See Pen. Code, § 192, subd. 2.)[11] Apparently it accepted the prosecutor's argument that defendant had committed a misdemeanor by carrying a loaded gun in a public place, and had therefore committed "an unlawful act, not amounting to felony, . . ." within the meaning of the first category of involuntary manslaughter.[12] The gravamen of that category of involuntary manslaughter is the commission of an unlawful act with criminal intent or criminal negligence, and the act in question must be dangerous to human life or safety. (See *People* v. *Stuart* (1956) 47 Cal.2d 167, 173 [302 P.2d 5, 55 A.L.R.2d 705]; Pen. Code, §§ 192, 20.) ▮▮▮ ▮ Defendant's October 15, 1977, statement to Deputy Moltmann establishes rather strongly that his conduct was dangerous to human life—he admitted that "the home boy" (Corella) told him to shoot the gun, that defendant loaded it, and that it went off

---

[10] Penal Code section 20 provides: "In every crime or public offense there must exist a union, or joint operation of act and intent, or criminal negligence."

[11] Penal Code section 192 provides in part: "Manslaughter is the unlawful killing of a human being, without malice. It is of three kinds:

". . . . . . . . . . . . . . . . . . .

"2. Involuntary—in the commission of an unlawful act, not amounting to felony; or in the commission of a lawful act which might produce death, in an unlawful manner, or without due caution and circumspection; provided that this subdivision shall not apply to acts committed in the driving of a vehicle."

[12] Before finding defendant guilty and stating that "[t]here [was] no question that what was involved was a negligent act [a]nd also . . . not a lawful act," the trial court heard the prosecutor argue that defendant had committed two unlawful acts: He had possessed a sawed-off shotgun, thereby committing a felony (see Pen. Code, § 12020), and he had carried a loaded gun in a public place, thereby committing a misdemeanor. (See Pen. Code, § 12031.) Construing the trial court's finding in favor of the judgment, we conclude that it found defendant had committed "an unlawful act, not amounting to felony" (Pen. Code, § 192, subd. 2) by violating Penal Code section 12031. In any event, since our Supreme Court has indicated that the list of elements of manslaughter in Penal Code section 192 is not exclusive and since it is clear that the trial court did not find that defendant had acted with malice, we are not seriously troubled by the possibility that the trial court may have based its finding upon defendant's commission of an unlawful act that constituted both a felony (Pen. Code, § 12020) and a misdemeanor. (Pen. Code, § 12031; see *People* v. *Morales* (1975) 49 Cal.App.3d 134, 144-145, fn. 7 [122 Cal.Rptr. 157]; *People* v. *Conley* (1966) 64 Cal.2d 310, 317, 318 [49 Cal.Rptr. 815, 411 P.2d 911].)

while he had one hand on "the barrel and one on the stock."[13] As discussed above, this incident occurred while several people were within a close proximity. Such evidence establishes the requisite unity of criminal intent and conduct. (See Pen. Code, § 26; compare *People* v. *Stuart, supra,* 47 Cal.2d at p. 174 [pharmacist not criminally negligent where a baby's death followed the pharmacist's unknowing use of a chemical that was in a mislabeled bottle]; *People* v. *Rodriguez* (1960) 186 Cal.App.2d 433, 435, 440-441 [8 Cal.Rptr. 863] [no criminal liability imposed upon mother of a child who died during a fire in the home while the mother was apparently away from the home]; *Somers* v. *Superior Court* (1973) 32 Cal.App.3d 961, 967-970 [108 Cal.Rptr. 630] [appellate court found a total absence of evidence of defendant's disregard for human life, and no criminal negligence where the defendant—a law enforcement officer—justifiably killed an apparent armed robbery suspect].)

## DISPOSITION

The judgment is affirmed.

Allport, J., and Potter, J., concurred.

---

[13]As we indicated previously, defendant objected to the admissibility of his October 15, 1977, statement to Deputy Moltmann on the ground that Moltmann then failed to elicit a waiver of defendant's constitutional rights. Because the statement constituted a confession—it admitted all of the facts necessary to constitute the offense of involuntary manslaughter—we must decide whether the trial court correctly ruled that it was given voluntarily. (*People* v. *Jimenez* (1978) 21 Cal.3d 595, 601, fn. 2, 608, 609 [147 Cal.Rptr. 172, 580 P.2d 672].) In determining the voluntariness of a confession, a court must apply the beyond a reasonable doubt standard. Because the trial court admitted the statement without indicating what standard it applied, we must presume that it applied a lower standard of proof. (*Ibid.*)

Although Moltmann never received an answer on October 15, 1977, when he asked defendant whether his attorney "[had] explained all of [his] rights to [him]," defendant had told Moltmann on October 10—after Moltmann gave him a *Miranda* warning—that he understood his rights and did not wish to speak to Moltmann. Furthermore, defendant was neither in custody when he saw Moltmann on October 10, nor when he gave him a statement on October 15. Defendant was with his attorney when he went to the Hall of Justice and gave his statement. Based upon this record we conclude that there is no reasonable probability that a result more favorable to defendant would have been reached on the issue of the voluntary nature of defendant's statement if the court had applied the correct standard of proof. Consequently we must sustain the trial court's finding of voluntariness. (*Id.,* at pp. 608-609; see also *People* v. *Walker* (1978) 83 Cal.App.3d 619, 621 [148 Cal.Rptr. 66]; compare *In re Anthony J.* (1978) 86 Cal.App.3d 164, 171-172 [150 Cal.Rptr. 183].)