[No. F006089. Fifth Dist. Jan. 23, 1987.]

THE PEOPLE, Plaintiff and Respondent, v.
GUSTAVO PICENO MORENO, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts II and III.

1180

**Counsel**

Elaine Forrester, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, Jane N. Kirkland, James T. McNally and Jane L. Lamborn, Deputy Attorneys General, for Plaintiff and Respondent.

**Opinion**

**HAMLIN, Acting P. J.**—Defendant appeals from the judgment on a jury verdict convicting him of possession of cocaine for sale (Health & Saf. Code, § 11351), misdemeanor driving under the influence of alcohol (Veh. Code, § 23152, subd. (a)), and misdemeanor driving with a blood alcohol level in excess of 0.10 (Veh. Code, § 23152, subd. (b)). During the course of trial, defendant admitted he had suffered prior convictions for driving under the influence of intoxicants, in violation of Vehicle Code section 23152, subdivisions (a) and (b). The court sentenced defendant to prison for the median term of three years on his conviction of possession of cocaine for sale and stayed sentence on the other convictions.

On appeal, defendant urges reversal of his convictions because his trial counsel failed in several respects to provide him effective assistance. To the extent trial counsel failed to object to admission of defendant's out-of-court

statements when the prosecution failed to independently establish the corpus delicti of the Vehicle Code offenses, we are persuaded, albeit somewhat reluctantly, that trial counsel did fail to render effective assistance. We will therefore reverse defendant's convictions for misdemeanor driving under the influence of alcohol and misdemeanor driving with a blood alcohol level in excess of 0.10 percent, and affirm the judgment in all other respects.

FACTS

At about 1:15 a.m. on February 1, 1985, Madera Police Officers Leon George and Jerrell Huckobey were dispatched to the scene of an accident at the intersection of South B and Ninth Streets in the City of Madera. George observed a skid mark from the curb line to a telephone pole. He determined that a Chevrolet truck parked in the Day & Night Market parking lot nearby had collided with the telephone pole. The truck had sustained moderate damage to the left front fender area, and there were splinters and markings on the telephone pole. George ran the license number of the truck through the Department of Motor Vehicles and learned that defendant was the registered owner of the truck.

Huckobey, who arrived at the accident scene shortly before George, observed a number of bystanders in the area of the unoccupied truck. Huckobey went into the market to look for the owner of the truck, and he saw defendant walking up and down the store aisles. Huckobey asked defendant if he had been driving the truck; defendant responded that he had, but no one had seen him and Huckobey would never be able to prove it. This exchange between Huckobey and defendant was in English because Huckobey speaks no Spanish. Huckobey testified he and defendant had no trouble understanding each other except for some slurring in defendant's speech. At that time Huckobey also noticed an odor of alcohol about defendant's person and that defendant's eyes were bloodshot and watery; defendant was staggering very badly. Huckobey concluded defendant was intoxicated.

Huckobey then arrested defendant for driving under the influence of alcohol. He conducted a pat search for weapons and found nothing. Huckobey handcuffed defendant and put him in the back of Huckobey's patrol car. Huckobey locked the car and returned to investigate the accident scene with Officer George. Huckobey talked to bystanders and ascertained that, other than two who identified themselves as passengers in the vehicle, no one had seen the accident. Huckobey then took defendant to the Madera County jail. During the ride Huckobey did not notice defendant making any unusual movements in the back seat. At the jail and prior to the booking process, a blood sample was drawn. Huckobey testified he gave defendant the choice of three chemical tests to measure blood alcohol, and defendant

told Huckobey the blood test would be fine. No contraband was discovered during the booking search.

Huckobey then returned to his patrol car and searched the rear seat area, as is his standard procedure. Huckobey found a plastic bag containing white powder that tested positive for the presence of cocaine. Huckobey had searched the patrol car when he came on shift at approximately 10:45 p.m. as he customarily did, and there was nothing in the car then. Huckobey had had no one in the car other than defendant, and Huckobey always locked the car if he had to leave it. Defendant was the only arrest Huckobey made that night.

On cross-examination Huckobey demonstrated the manner in which he had handcuffed defendant. Defendant's hands were behind his back, permitting a very limited amount of movement. While it would have been possible for someone handcuffed in this manner to reach into his back pocket, he would have been unable to reach the front ones. Huckobey acknowledged there were numerous bars in the area of the accident. He testified it was not uncommon in that area to see persons staggering back and forth between these bars, especially in the evening hours on a weekend. Huckobey named Virginia Mora and Teodoro Garcia as the two persons who had told him they were passengers in defendant's truck.

Sergeant Fred Flores is in charge of the Madera County Sheriff's Department narcotic enforcement team. Flores has had about 250 hours of specialized training. After being qualified as an expert (following voir dire and objection by defendant's counsel), Flores offered his opinion that a plastic bag containing 10.9 grams of cocaine would be possessed for sale. The heaviest user he had encountered used about one gram per day. Defendant was not found in possession of any of the paraphernalia associated with the use of cocaine, such as a small flat mirror, a razor, and a straw. On cross-examination Flores acknowledged that a user could use other implements, like a tightly rolled bill in place of a straw, a knife in place of a razor blade, etc., to use cocaine. Defendant had no knife at the time of his arrest. Flores also testified that no implements associated with the sale of cocaine, like numerous small envelopes, called bindles, scales, etc., were found in the possession of defendant. Additionally, Flores acknowledged that most dealers carry weapons, but defendant had none in his possession at the time of his arrest.

Flores was cross-examined about "free-basing" cocaine. In free-basing, the cutting ingredients are removed, leaving pure cocaine which is then heated and inhaled. Cocaine is available in varying strengths, and a person who acquired some that had been cut many times and was therefore weak might

need a larger quantity to achieve the desired effect. Flores finally testified he had never heard of anyone requiring as much as five grams a day in order to free-base. Althouqh he acknowledged testifying at the preliminary hearing that use of five grams per day was "possible," Flores testified on rebuttal that, while it might be possible, he had never heard of it.

Also on rebuttal Flores testified he had worked undercover and made numerous purchases of cocaine, and when purchased for personal use, the drug is usually provided in bindles of one-eighth gram to one-quarter gram. He considered 11 grams to be a relatively large amount; within Flores's experience he did not know of that amount being purchased other than for resale. Flores testified that the "paraphernalia" related to sales is often bulky, and Flores would not expect to find it carried on the person. The scales, etc., would more likely be found on the premises where the sale is made. On the other hand, paraphernalia associated with personal use, the mirror, razor, straw, etc., are generally found on the person along with the cocaine. Flores estimated that the street value of the cocaine seized from Huckobey's police car was approximately $1,100.

The parties stipulated that based on the blood sample drawn from defendant at jail, defendant's blood alcohol level at 2 a.m. on February 1 was 0.23.

*Defense Case*

Sandra Arismendez testified that she had become acquainted with defendant while working as a waitress at the Veteran's Bar in Madera. The Veteran's Bar was about a block away from the Day & Night Market. She testified that on the night in question she was drinking with defendant at the bar when a man came in and told defendant "they wrecked his car." Defendant went out to look. She testified defendant was only slightly intoxicated. On cross-examination Arismendez stated defendant had been in the bar since about 9:30. During the time he was sitting in the bar, a woman and two men came in and talked to him. Arismendez did not see defendant driving any vehicle that night, and she did not see him again after he left the Veteran's Bar until she visited him in jail.

Defendant testified and acknowledged that he was the owner of the 1979 Chevrolet pickup truck involved in the accident. He had gone to the Veteran's Bar about 8:30 or 9:30 on the evening of Friday, January 31. He recognized Arismendez as a woman who worked at the bar. Defendant testified he was accompanied by his friend, Teodoro Garcia, and Virginia Mora. The two asked to borrow defendant's truck, and defendant gave them the keys while he remained in the bar. Defendant testified he had had quite a bit to drink. When defendant got word that his truck had been damaged,

he went to the Day & Night Market to see for himself. As he approached the truck from the right side, it did not appear to be damaged. Then a police officer spoke to him in English, which defendant did not understand too well, and put handcuffs on him. At the time, defendant was in the parking lot and still had observed no damage to his truck. Defendant testified he understands a few words of English, but he does not speak English and did not converse with Huckobey in English. Defendant denied he ever told Huckobey that he had been driving the car but no one could prove it. He also denied that he had ever seen the bag of cocaine prior to the time of trial and had no idea whose it was. He testified he did not slip anything under the seat of the patrol car.

On cross-examination defendant reiterated he had not entered the market but was arrested while he was walking toward his truck. He denied that Huckobey had offered him a choice of chemical tests and denied he elected the blood test. Defendant testified he has been in the United States for 11 years but stated he spoke only Spanish and had never conversed in English with Huckobey or other Madera police officers. Defendant did not have the truck keys with him when he was arrested, and he thought they were either in the truck or still in the possession of Garcia or Mora. Defendant saw Garcia and Mora as they were leaving the store. Defendant stated Mora had been arrested because she told the police she had been driving the truck; she yelled at defendant in Spanish, asking why he was being arrested. Defendant testified Mora got a ticket and was also brought to the jail, where defendant told her they had been arrested for the same thing.

In rebuttal, the prosecution offered testimony of Officer Russell Suderman and of Officer Darryl Hibbons of the Madera Police Department. Both testified they had spoken with defendant on more than one occasion, and although the conversations were of limited duration, they were definitely in English. Suderman speaks only enough Spanish to get a suspect's name, address, and birthdate, while Hibbons speaks no Spanish at all. Neither testified he had any trouble communicating with defendant in English.

### DISCUSSION

Defendant raises several issues, all variations on the theme that trial counsel was ineffective. Although, as defendant points out, he is entitled to raise this argument on appeal instead of by way of a petition for writ of habeas corpus, this court is, of course, limited to the record on appeal and may not speculate about matters outside that record. (*People* v. *Pope* (1979) 23 Cal.3d 412, 425-426 [152 Cal.Rptr. 732, 590 P.2d 859, 2 A.L.R.4th 1].)

The standards by which a reviewing court is to gauge trial counsel's performance are well settled. As the Supreme Court pointed out in *People*

v. *Pope, supra,* 23 Cal.3d at page 425, a defendant claiming trial counsel rendered ineffective assistance "must show that trial counsel failed to act in a manner to be expected of reasonably competent attorneys acting as diligent advocates. In addition, appellant must establish that counsel's acts or omissions resulted in the withdrawal of a potentially meritorious defense."

Similarly, the Supreme Court in *People* v. *Fosselman* (1983) 33 Cal.3d 572, 584 [189 Cal.Rptr. 855, 659 P.2d 1144], concluded, "in cases in which a claim of ineffective assistance of counsel is based on acts or omissions not amounting to withdrawal of a defense, a defendant may prove such ineffectiveness if he establishes that his counsel failed to perform with reasonable competence and that it is reasonably probable a determination more favorable to the defendant would have resulted in the absence of counsel's failings. [Citations.]"

Especially as expanded by the Supreme Court in *People* v. *Fosselman, supra,* 33 Cal.3d 572, the California test is consistent with that recently announced by the United States Supreme Court in *Strickland* v. *Washington* (1984) 466 U.S. 668 [80 L.Ed.2d 674, 104 S.Ct. 2052] where the court stated in part: "A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable." (*Id.* at p. 687 [80 L.Ed.2d at p. 693].)

It is our task to apply these standards to defendant's claims on appeal.

## I.

### *Failure to Challenge Adequacy of Corpus Delicti*

Defendant first argues that, without reliance on his extrajudicial statement to Officer Huckobey, the prosecution failed to establish the corpus delicti of the charges of driving under the influence for which defendant was convicted. This appears to be virtually a question of first impression, at least in the California appellate courts.[1] Since drunk driving is generally prose-

---

[1] A 1924 case did address this question, concluding that "in order to show that a criminal offense had been committed it was necessary to establish the fact that the driver of the automo-

cuted as a misdemeanor, the little authority that does exist concerning the corpus delicti of the offense appears in decisions of the appellate departments of various superior courts.

Certain general principles governing establishment of the corpus delicti are well settled. As Witkin points out, "[t]he significance of the corpus delicti concept lies in the rule that *no part of it can be proved by the extrajudicial admissions or confession of the defendant.* Unless the corpus delicti is established such statements cannot be admitted in evidence. [Citations.] . . . [¶] Once the corpus delicti is independently established, the extrajudicial statements of the defendant are given their full evidentiary effect." (1 Witkin, Cal. Crimes (1963) Elements of Crime, § 89, pp. 85-86. See generally *Jones* v. *Superior Court* (1979) 96 Cal.App.3d 390, 393 [157 Cal.Rptr. 809]; *People* v. *Ramirez* (1979) 91 Cal.App.3d 132, 137 [153 Cal.Rptr. 789].)

The reaons for the corpus delicti rule were explained in *Jones* v. *Superior Court, supra,* 96 Cal.App.3d 390, 397: "The corpus delicti rule was established by the courts to 'protect a defendant from the possibility of fabricated testimony out of which might be wrongfully established both the crime and its perpetrator.' [Citations.] The corpus delicti rule arose from a judicial concern that false confessions would lead to unjust convictions. [Citation.] Today's judicial retention of the rule reflects the continued fear that confessions may be the result of either improper police activity or the mental instability of the accused, and the recognition that juries are likely to accept confessions uncritically. [Citation.]"

In *People* v. *Ramirez, supra,* 91 Cal.App.3d 132, 137, the court summarized the various rules applicable to the prosecution's duty to establish the corpus delicti as follows: "It is true that the corpus delicti, i.e., the body or elements of a crime, must be established independently of the extrajudicial statements of the accused. The elements of the corpus delicti—(1) the injury or loss or harm and (2) a criminal agency which causes such injury, loss or harm—need only be proven by a 'reasonable probability' [citation] or, as otherwise stated, by slight or prima facie proof. [Citation.] But the prosecution need not establish the accused as the perpetrator of the offense [citation], and it may rely upon testimony of the accused as well as circumstantial evidence in meeting its burden. [Citation.] Furthermore, the order of proof is discretionary [citations], and a plausible noncriminal explanation of the event does not compel a finding of lack of criminal agency. [Citations.]"

bile was under the influence of intoxicating liquor, which could properly be done by showing that all the persons riding on the front seat of the automobile were drunk at the time it was alleged that the automobile was being driven on a public highway." (*People* v. *Ellena* (1924) 67 Cal.App. 683, 687 [228 P. 389].)

██ The corpus delicti in a prosecution for driving under the influence of alcohol is established "by a prima facie showing that: (1) an individual, (2) while under the influence of intoxicating liquor, or under the combined influence of intoxicating liquor and any drug; (3) drove a vehicle on a highway." (*People* v. *Nelson* (1983) 140 Cal.App.3d Supp. 1, 3 [189 Cal.Rptr. 845].) In *Nelson,* a case on which defendant relies, a police officer responded to the scene of a reported accident and found two people standing next to the car involved. The officer asked defendant who had been driving that car, a Volkswagen, and the defendant responded that he had. The officer had not witnessed the accident itself, and the only eyewitness had seen both men ejected from the Volkswagen and could not determine which one was the driver. In reversing defendant's conviction, the court relied upon the fact that "it [was] just as likely that the other man, concerning whom there was no evidence of intoxication, was driving the vehicle." (*Id.* at p. Supp. 4.) The court also rejected the Attorney General's argument that because the car was in an accident, it could be inferred the driver was intoxicated. (See also *People* v. *Kelley* (1937) 27 Cal.App.2d Supp. 771 [70 P.2d 276]; *State* v. *Hamrick* (1978) 19 Wn.App. 417 [576 P.2d 912].)

On the other hand, in *People* v. *Garcia* (1983) 149 Cal.App.3d Supp. 50 [197 Cal.Rptr. 277], a police officer arrived at the scene of a traffic collision to find the defendant leaning up against the passenger side of a pickup truck involved in the collision. There were also three or four bystanders in the vicinity. Approaching the defendant and making an initial observation that he was intoxicated, the officer asked the defendant if he had been driving the truck, and the defendant responded affirmatively. Adopting the *Nelson* court's delineation of the corpus delicti of driving under the influence, and emphasizing that the prosecutor only has to make a prima facie showing of the corpus and may do so by circumstantial evidence, the court rejected the defendant's contention that the prosecution had not made the requisite showing that he had, in fact, driven the truck. There was no question, based on the officer's observations and testimony, that the defendant was drunk. Physical evidence at the scene established that the truck had been driven on a highway, and the court noted that in response to police questioning, all of the bystanders present denied he or she had been the one driving the truck. This blanket denial by all other possible suspects, combined with the defendant's immediate proximity to the truck, supported a reasonable inference that the defendant had been driving and satisfied the prosecution's burden of establishing the corpus delicti. The court characterized the defendant's admission as merely " 'frosting on the cake.' " (*Garcia, supra,* at p. Supp. 54. See also *People* v. *Hanggi* (1968) 265 Cal.App.2d Supp. 969, 972-973 [70 Cal.Rptr. 540].)

While *Nelson* and *Kelley* make clear that mere proximity to the vehicle is not sufficient, it is certainly a factor which can properly be considered;

people in proximity to a vehicle are more likely to have some connection to the vehicle, whether driver or passenger, than people located at some distance away. Thus, when it is established by competent evidence that no one in the reasonable vicinity except the suspect acknowledges having been the driver of the car and the suspect has some demonstrable connection with the vehicle, it then becomes a reasonable inference from circumstantial evidence that the suspect was, in fact, the driver. Other jurisdictions have found the presence of one or more other possible drivers less troublesome. (See, e.g., *Commonwealth* v. *Jones* (1976) 242 Pa.Super. 471 [364 A.2d 368]; *State* v. *Knoefler* (Utah 1977) 563 P.2d 175; *State* v. *Cazier* (Utah 1974) 521 P.2d 554.)

In neither *People* v. *Nelson, supra,* 140 Cal.App.3d Supp. 1, nor *People* v. *Kelley, supra,* 27 Cal.App.2d Supp. 771, does the record reflect any elimination of other, possible drivers, specifically the defendant's companion in each of those cases. Had, for example, the officer in *Nelson* first asked the defendant's companion whether he were the driver and gotten a negative response, it would have been reasonable for him to assume that the defendant had been the driver regardless of any later statement. Obviously, other indicia of control over the vehicle will vary from case to case and will carry varying degrees of weight in this equation. Nevertheless, given the principle that cars do not drive themselves, the need to rely on circumstantial evidence despite predictable weaknesses to identify the driver of a vehicle when police are called upon to do so should be no more onerous than any other situation which depends on *reasonable* inferences.

■ In the instant case, while the circumstantial evidence presented at trial was sufficient to sustain an inference that defendant had been driving his pickup truck at the time of the accident, we have concluded that evidence of the nature here presented should not have been admitted. Since defendant has based his appeal on ineffective assistance of trial counsel, it is not enough that we find the evidence adequate as actually presented; we must determine if effective trial counsel would have been successful in excluding this evidence and, if so, whether it is reasonably probable a result more favorable to defendant would have been reached absent counsel's failings. (*People* v. *Fosselman, supra,* 33 Cal.3d at p. 584.)

We summarize the evidence here presented. Officers Huckobey and George responded to an accident report and, upon arrival at the scene, found a pickup truck parked in the lot of a Day & Night Market. The truck showed moderate damage to its left front fender area, and a telephone pole at the corner of the same lot showed corresponding, although slight, damage. Skid marks near the telephone pole evidenced that the truck had been driven into the pole before being parked in the lot. No one was in the truck when the

officers arrived at the scene, although several bystanders were present in the immediate vicinity. A check with the Department of Motor Vehicles disclosed that defendant was the registered owner of the truck; defendant himself, obviously intoxicated, was located inside the nearby Day & Night Market.

Under the rationale of the cases discussed above, therefore, the prosecution could meet its burden of establishing the corpus delicti of driving under the influence by eliminating those other persons present at the scene from the class of possible drivers. This can be accomplished in a variety of ways. A bystander can, of course, testify and deny having driven the vehicle at the time of the offense being tried. Physical evidence collected from the vehicle, such as fingerprints, could be introduced to show that no one other than defendant had been driving. We need not speculate on all possible means of proof; suffice it to say that once other possible drivers have been eliminated from consideration, a suspect's proximity to a vehicle thought to have been driven by a person under the influence of alcohol is evidence from which a reasonable inference can be drawn that the suspect was the driver. Obviously, the nearer the suspect is to the vehicle, such as the case in which the defendant was found leaning up against the car, the stronger the inference of driving (*People* v. *Garcia, supra,* 149 Cal.App.3d Supp. 50.) Nevertheless, the fact that a suspect is found a short distance from the car, as in the instant case, does not preclude the factfinder from drawing the necessary inference, particularly when, as here, the suspect has another established nexus with the vehicle, such as ownership.

However, in this case the only evidence by which other possible drivers were excluded from the suspect class was testimony by Officer Huckobey. On direct examination he testified that, other than the people in the vehicle itself, none of the bystanders indicated they had seen the accident. During defense counsel's cross-examination he asked Huckobey if Huckobey saw Virginia Mora and Teodoro Garcia at the scene of the accident and if Huckobey determined those persons to have been passengers in defendant's vehicle. Huckobey answered that those persons advised they were passengers. This prompted defense counsel to ask Huckobey whether those persons spoke to him in English; Huckobey responded that one of them spoke almost no English.

It seems clear that Huckobey's testimony about what the bystanders told him was hearsay and was relevant to establish the corpus delicti only if offered to prove that Mora and Garcia were passengers, and not the driver, of defendant's truck. Similarly, Huckobey's testimony that the other bystanders did not see the accident was hearsay and was relevant only to establish by implication that persons who did not see the accident could not

have been the driver. Because the out-of-court statements of the bystanders were thus offered for the truth of the matter asserted, these statements are hearsay and should have been excluded upon proper objection. Although generally the failure to make such an objection renders hearsay evidence "competent" for purposes of appellate review, we must determine in this case whether the failure to make such an objection constitutes ineffective assistance of counsel. Since these statements appear to be the only evidence the prosecution was prepared to offer to satisfy its burden of establishing the corpus delicti of the two misdemeanor Vehicle Code violations, we can conceive of no tactical reason whatsoever which might have dictated trial counsel's decision not to object.

Moreover, to the extent the corpus delicti was "fleshed out" by Huckobey's testimony *on cross-examination* that two of the bystanders later identified themselves as passengers in the truck, effective assistance of trial counsel does not encompass remedying defects in the prosecution's case. We recognize that discussion of the elements necessary to establish the corpus delicti of driving under the influence of alcohol has been somewhat limited, and we suspect, based upon our review of the cases discussed above, that evidence of the nature offered in the instant case is often admitted without objection. The fact that the prosecution has previously established the corpus delicti with evidence inadmissible upon proper objection does not, of course, create any new exception to the hearsay rule nor does this careless practice gain acceptability by repetition. Even when, as in this case, a defendant may face more serious felony charges joined for trial with the vehicular offenses, defense counsel must remain alert to the prosecution's burden of proving the corpus delicti of the less serious offenses by competent evidence and neither permit inadmissible evidence to pass without objection nor himself elicit evidence which will remedy an otherwise fatal defect.

Under these circumstances we conclude defendant was denied effective assistance of counsel in defending against the charges of driving while intoxicated. Absent Huckobey's testimony concerning the bystanders' hearsay statements, the prosecution failed to establish by exclusion of other possible drivers that defendant had, in fact, been driving the pickup at the time of the accident while under the influence of alcohol. Having failed to establish the corpus delicti, defendant's extrajudicial confession, i.e., that he had driven the truck but no one had seen him and Huckobey would never be able to prove it, should not have been admitted. Without evidence of the bystanders' statements and defendant's own statement, we believe it reasonably probable a result more favorable to defendant could have been reached, and accordingly we reverse defendant's convictions of violating Vehicle Code section 23152, subdivisions (a), driving under the influence of alcohol, and (b), driving with a blood alcohol level in excess of 0.10 percent.

## II., III.\*

. . . . . . . . . . . . . . . . . . .

The judgments convicting defendant of driving under the influence of alcohol and of driving with a blood alcohol level in excess of 0.10 percent are reversed; the judgment convicting defendant of possession of cocaine for sale is affirmed. The trial court is directed to prepare and forward to the appropriate authorities an amended abstract of judgment consistent with this opinion.

Best, J., and Ballantyne, J., concurred.

A petition for a rehearing was denied February 20, 1987, and the petitions of both parties for review by the Supreme Court were denied April 15, 1987.

\*See footnote on page 1179, *ante.*