[No. E005849. Fourth Dist., Div. Two. Dec. 19, 1989.]

THE PEOPLE, Plaintiff and Respondent, v.
JEROME GAPELU, Defendant and Appellant.

## COUNSEL

Carl Fabian, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Richard B. Iglehart, Chief Assistant Attorney General, Harley D. Mayfield, Assistant Attorney General, Steven H. Zeigan and Robert M. Foster, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**HOLLENHORST, Acting P. J.**—A jury convicted Jerome Gapelu of vehicular manslaughter (Pen. Code, § 192, subd. (c)(3)), driving under the influence causing injury (Veh. Code, § 23153, subd. (a)), and driving with an alcohol blood count of 0.10 percent or higher (Veh. Code, § 23153, subd. (b)). He was granted probation and appeals, claiming the People failed to establish prima facie proof he committed the offenses, independent of his admissions. We disagree and affirm.

### FACTS

A silver station wagon hit, from behind, a blue truck which was stopped in the road and was signaling to make a left-hand turn. As a result of the collision, the truck was pushed into an oncoming van. The driver of the truck was killed and the driver and passengers in the van were injured, as was the owner of the station wagon, Gapelu.

### DISCUSSION

*People* v. *Moreno* (1987) 188 Cal.App.3d 1179 [233 Cal. Rptr. 863], a Fifth Appellate District opinion, is the only published Court of Appeal

decision we or the parties have discovered which addresses the requirement of a prima facie showing of driving under the influence for purposes of admitting a defendant's statements. Discussing, first, two previous decisions on the matter which involved drivers who were accompanied by passengers of driving age, the *Moreno* court held: "Under the rationale of the cases discussed above, . . . the prosecution could meet its burden of establishing the corpus delicti of driving under the influence by eliminating those other persons present at the scene from the class of possible drivers. This can be accomplished in a variety of ways. A bystander can, of course, testify[1] and deny having driven the vehicle at the time of the offense . . . . *Physical evidence collected from the vehicle,* such as fingerprints, could be introduced to show that no one other than defendant had been driving. . . . [O]nce other possible drivers have been eliminated from consideration, a suspect's proximity to [the] vehicle . . . is evidence from which a reasonable inference can be drawn that the suspect was the driver. Obviously, the nearer the suspect is to the vehicle, . . . the stronger the inference of driving . . . ." (*Id.,* at p. 1190; italics added.)

■ Assuming, arguendo, that we agree with the holding of *Moreno,* we are persuaded that the People here established a sufficient prima facie showing that Gapelu was the driver of the silver station wagon.

A witness who heard the first impact, saw the truck and station wagon fly into the air, and heard the second impact, testified that she then ran to a restaurant in front of which the accident had occurred. She told the owners of the restaurant to call the paramedics, but they said someone had already taken care of that. She went outside and a man at the scene asked her for a flashlight so he could check on the condition of the victim in the blue truck. She ran to her car and got her flashlight. After giving it to the man, who with another person was checking on the victim, she walked to the blue truck and saw that the victim had been crushed. She then looked up at the station wagon and, seeing a child's baseball cap in the street, feared a child had been injured in the accident. She ran over to the wagon and saw Gapelu standing by himself at the rear of the car. The rest of the people at the scene were near the blue truck. She saw no one running from the scene and no one else who was injured. There was glass embedded in and blood flowing from Gapelu's elbow. There was also blood coming from an injury on his head

---

[1] *Moreno* takes a firm stand by insisting that *all* bystanders come into court and deny, under oath, that they drove the suspect car, discounting as hearsay any screening conducted at the scene. Interestingly enough, in *People* v. *Garcia* (1983) 149 Cal.App.3d Supp. 50 [197 Cal. Rptr. 277], the only published opinion on the subject coming out of this jurisdiction, the appellate division of the San Bernardino Superior Court utilized such on-the-scene hearsay denials of involvement by spectators to support a prima facie showing that defendant was the driver of the car.

and there was glass in his hair.[2] Gapelu smelled of alcohol and appeared to be intoxicated.

A police officer who responded to the scene testified that during the first half-hour after he arrived, he saw no one near the station wagon but Gapelu. When he looked inside the car he saw that the windshield had been broken all the way across, but the major damage was on the driver's side. The steering wheel was bent forward. The front passenger seat had been pushed up to six inches from the dashboard. There was a foaming open bottle of beer on the driver's floorboard. His observations of Gapelu matched the witness's. In addition, he stated Gapelu had no injuries to his legs and he stood for some period of time near the wagon.

A fireman who arrived at the scene testified that Gapelu stood by himself at the curb near the station wagon. He observed the injury to Gapelu's head and the damage to the inside of the car. He opined at trial that the two were consistent. He also said Gapelu twice tried to leave the ambulance and walk away after being strapped to a board and placed inside.

Gapelu's head injury and the glass on his person tie him to the damage inside the driver's side of the car. His lack of leg injuries discounts the possibility that he was in the front passenger seat. The fact the driver of the wagon hit a car that was stopped and signaling indicates he or she was either not paying attention or was not mentally in control, as was the case with Gapelu. No one else was seen near the car; no one else was seen injured. Gapelu twice tried to leave the scene, which is, of course, inferential evidence of guilt. This constituted sufficient prima facie proof that Gapelu was the driver of the silver station wagon. We, like the court in *People* v. *Garcia, supra,* 149 Cal.App.3d Supp. 50, 54, consider Gapelu's admissions that he was in fact the driver to be " 'frosting on the cake.' "

## DISPOSITION

The judgment is affirmed.

McDaniel, J., and Dabney, J., concurred.

---

[2] We, like the People, are puzzled by the representation by defense counsel on appeal that this witness may have made her observations of Gapelu "as much as thirty (30) minutes after the accident." Not only was there no such testimony, but it is difficult to believe that any witness in that close a proximity to an accident could not do all the things she did, even at a crawl, in less than 30 minutes, no less *running,* as she testified she did.