[No. A086057. First Dist., Div. Two. Nov. 23, 1999.]

THE PEOPLE, Plaintiff and Appellant, v.
REGINALD DENNIS SCOTT, Defendant and Respondent.

■■■■■■■■■

■■■■■■■■■■■■■■■■■■■■■■■■

■■■■■■■■■■■■■■■■■■■■■■■■

**COUNSEL**

Bill Lockyer, Attorney General, David P. Druliner, Chief Assistant Attorney General, Ronald A. Bass, Assistant Attorney General, Rene A. Chacon, and Juliet B. Haley, Deputy Attorneys General, for Plaintiff and Appellant.

David Coleman III, Public Defender, and Laurie Mont, Deputy Public Defender, for Defendant and Respondent.

**OPINION**

**HAERLE, J.—**

## I. INTRODUCTION

This is an appeal by the Attorney General from a dismissal of an information charging felony drunk driving. The appeal implicates the application of the corpus delicti rule. We reverse and remand.

## II. FACTUAL AND PROCEDURAL BACKGROUND

At approximately 10:30 p.m. on October 3, 1997, California Highway Patrol (CHP) Officer Steven Barruel was dispatched to the intersection of Bethel Island Road and Willow Road West on Bethel Island, Contra Costa County. En route to this location, which he testified was "desolate" and dark, he saw no pedestrians or other vehicular traffic while driving onto the island. The nearest business to the intersection was about two miles away, and the only access to it via Bethel Island Road.

Contra Costa Deputy Sheriff Randy Blumberg and his cruiser were already on the scene when Barruel arrived. Also at the scene, albeit parked on the wrong side of the road, was a 1983 red Nissan Stanza. The left front tire

was off the Nissan, and the car was raised up onto a hand jack.[1] Immediately to the left of the Nissan where it was parked was a marsh; there were wet mud smears and liquid on the vehicle's left front panel.

Respondent was sitting in the backseat of Deputy Blumberg's cruiser. He was quite wet and substantially covered in mud "from head to toe." He also had a small laceration on his left forehead, just above his eye.

Deputy Blumberg told Barruel that, when he arrived in the area earlier, he saw respondent standing in the middle of the road about a quarter of a mile away from where the Nissan was parked. Blumberg told Barruel that he also had not seen any other vehicular or pedestrian traffic in the area. Blumberg related that, when he had approached respondent, the latter had said that "he was not a burglar and that he was trying to look for help. He had a blow out and that he was the only one and that he had been driving the car. He was the driver of the car." Respondent also said to Blumberg that he had come from the "Boat House Club down the street on Bethel Island Road."

Officer Barruel then had respondent exit Deputy Blumberg's cruiser and proceeded to question him. In the course of that conversation, Barruel noted signs of intoxication, e.g., an unsteady gait, swaying back and forth, red and watery eyes, slurred speech, breath smelling of alcohol, etc. Respondent produced from his pockets both the keys to the Nissan and a set of lug nuts to a tire. The registered owner of the Nissan was determined to be someone with the same address as respondent.

Barruel conducted a series of field sobriety tests on respondent. The latter failed three of these and declined to take a fourth. Barruel then placed him under arrest and took him to the Martinez CHP office in order to administer breath tests. En route, respondent remarked to Barruel that he "really screwed up this time and that drinking alcohol . . . is his downfall." When two breath tests were administered at the CHP office, they showed respondent as having a blood-alcohol level of .21 and .22 respectively.

---

[1]At oral argument, respondent's counsel asserted that the record disclosed that (a) the removed tire was missing and (b) no tire-changing tools were found by the officers, thus suggesting the involvement of another person. These premises are only partially correct. The record reflects, as noted above, that the car was up on a jack. Officer Barruel had no recollection as to whether or not other tire-changing tools were at the scene, and his written report made no reference to any. However, he testified that, even if such tools were present, that fact would not normally be referenced in a written report. The only reference to the removed wheel was that "the left front tire was removed." When asked if the entire tire was gone, the officer responded: "The wheel was removed, had been taken off and the rubber portion was gone." There was no other examination on or explanation of this point. We disagree that this testimony suggests the possible, much less the necessary, presence of another person.

Barruel did not see any signs that the Nissan had been in a collision. In contrast to his admission to Blumberg, respondent told Barruel that he was not the driver of the vehicle, but also said that "he thought he had gotten a concussion." Respondent also told Barruel that he had not eaten since the previous day. Barruel found no blood or alcohol inside the vehicle; he could not recall whether he felt the engine to determine if it was warm.

On November 4, 1997, the Contra Costa County District Attorney filed a complaint accusing respondent of driving under the influence while having suffered three separate prior convictions for the same offense. (Veh. Code, §§ 23152, subd. (a), and 23175.) The complaint also charged that respondent had been driving with a blood-alcohol level of .08 or more, having suffered three separate prior convictions for the same offense. (*Ibid.*) He was further charged with driving with a suspended license, having been previously convicted of driving under the influence. (Veh. Code, § 14601.2, subd. (a).) Three prior prison term convictions were alleged within the meaning of Penal Code section 667.5.

At a preliminary hearing on December 2, 1998, respondent was held to answer on all charges and allegations.

On December 16, 1998, an information was filed accusing respondent of the same charges. He entered a plea of not guilty and denied all of the allegations.

On January 20, 1999, respondent filed a motion under Penal Code section 995 asking that the information be set aside. The motion was heard and granted on January 29, 1999. The People filed a timely notice of appeal.

### III. DISCUSSION

#### A. *The Standard of Review*

In *People* v. *Laiwa* (1983) 34 Cal.3d 711, 718 [195 Cal.Rptr. 503, 669 P.2d 1278], our Supreme Court explained both the standard of review of a decision on a Penal Code section 995 motion and the relevant roles of the superior and appellate courts therein: "[I]n proceedings under section 995 it is the magistrate who is the finder of fact; the superior court has none of the foregoing powers, and sits merely as a reviewing court; it must draw every legitimate inference in favor of the information, and cannot substitute its judgment as to the credibility or weight of the evidence for that of the magistrate. [Citation.] On review by appeal or writ, moreover, the appellate court in effect disregards the ruling of the superior court and directly reviews

the determination of the magistrate holding the defendant to answer. [Citations.]" (See also *People* v. *Jones* (1998) 17 Cal.4th 279, 301 [70 Cal.Rptr.2d 793, 949 P.2d 890] (*Jones*).)

Thus, here we are acting as a reviewing court of the magistrate's initial decision, the decision finding probable cause. "[E]very legitimate factual inference must be drawn to uphold the magistrate's decision." (*People* v. *Superior Court* (*Maciel*) (1982) 134 Cal.App.3d 893, 897, fn. 5 [184 Cal.Rptr. 870], citing *Caughlin* v. *Superior Court* (1971) 4 Cal.3d 461, 464-465 [93 Cal.Rptr. 587, 482 P.2d 211], and *Rideout* v. *Superior Court* (1967) 67 Cal.2d 471, 474 [62 Cal.Rptr. 581, 432 P.2d 197].) If there is some evidence to support the magistrate's order, the reviewing court will not inquire into its sufficiency. (*Rideout* v. *Superior Court, supra*, 67 Cal.2d at p. 474.)

The evidence which we may consider in this process does not include the admission made by respondent to Deputy Blumberg that he was the driver of the Nissan because, at least for now,[2] the rule is that the corpus delicti must be established independently of any admissions by the defendant. (See, e.g., *People* v. *Diaz* (1992) 3 Cal.4th 495, 528-529 [11 Cal.Rptr.2d 353, 834 P.2d 1171].)

B. *The Corpus Delicti Principle*

■ Just last year, our Supreme Court, in a unanimous opinion authored by Justice Mosk, summarized the corpus delicti principle, including what it mandates and what it does not. In *Jones, supra*, 17 Cal.4th 279, Justice Mosk said: " ' " 'The corpus delicti of a crime consists of two elements[:] the fact of the injury or loss or harm, and the existence of a criminal agency as its cause.' " ' [Citation.] 'In any criminal prosecution, the corpus delicti must be established by the prosecution independently from the extrajudicial statements, confessions or admissions of the defendant.' [Citations.] Such independent proof may consist of circumstantial evidence [citations], and need not establish the crime beyond a reasonable doubt. [Citation.] [¶] The purpose of the corpus delicti rule is to assure that 'the accused is not admitting to a crime that never occurred.' [Citation.] The amount of independent proof of a crime required for this purpose is quite small; we have described this quantum of evidence as 'slight' [citation] or 'minimal' [citation]. The People need make only a prima facie showing ' "permitting the reasonable inference that a crime was committed." ' [Citations.] The inference need not be 'the only, or even the most compelling, one . . . [but need

---

[2]Our Supreme Court has left open the issue of whether the 1982 constitutional amendment adding article I, section 28, subdivision (d), to the California Constitution changes matters. (See *Jones, supra,* 17 Cal.4th at p. 304.)

only be] a reasonable one . . . .' [Citation.]" (*Id.* at pp. 301-302; see also, to the same effect, *People* v. *Diaz*, *supra*, 3 Cal.4th at pp. 528-529; *People* v. *Jennings* (1991) 53 Cal.3d. 334, 364, 367-368 [279 Cal.Rptr. 780, 807 P.2d 1009] (*Jennings*); *People* v. *Wright* (1990) 52 Cal.3d 367, 403 [276 Cal.Rptr. 731, 802 P.2d 221].)

■ In the superior court, and again before us, respondent relies upon three cases as his principal basis for arguing that no evidence of the existence of a criminal act appeared in the record of the preliminary hearing here. In the first, *People* v. *Schuber* (1945) 71 Cal.App.2d 773, 775-777 [163 P.2d 498], a nine-year old girl had been occupying the same bed as the defendant, her stepfather, and suffered an unexplained (by her) laceration to her vagina. The appellate court ruled that there was no corpus delicti. We reject this ruling as any sort of valid authority now, inasmuch as it is entirely inconsistent with more recent sexual offense/corpus delicti rulings such as *Jones* and *Jennings*.

Respondent next cites two drunk driving/corpus delicti cases, *People* v. *Nelson* (1983) 140 Cal.App.3d Supp. 1 [189 Cal.Rptr. 845] (*Nelson*) and *People* v. *Moreno* (1987) 188 Cal.App.3d 1179 [233 Cal.Rptr. 863] (*Moreno*). In the former, two men were thrown from a car which had been observed, late at night, veering across lanes of a freeway at a 45- to 60-degree angle and hitting a guardrail. The charged defendant was one of those thrown from the car; he showed signs of intoxication and admitted being the driver. But the Appellate Division of the Los Angeles Superior Court reversed his drunk driving conviction, ruling that his admission should not have been admitted because of the lack of a corpus delicti. It stated: "The only witness to the accident . . . saw two men thrown from the Volkswagen and was unable to identify defendant as the driver. Thus, it is just as likely that the other man, concerning whom there was no evidence of intoxication, was driving the vehicle. Further, contrary to the People's contention, the fact of the accident itself is insufficient evidence from which it can be inferred that the vehicle was necessarily driven by an intoxicated individual." (*Nelson*, *supra*, 140 Cal.App.3d at p. Supp. 4.)

Building on this rather questionable precedent,[3] in *Moreno*, *supra*, 188 Cal.App.3d 1179, an appellate court reversed a drunk driving conviction on

---

[3]We agree with the Attorney General that a far more perceptive analysis of the current state of corpus delicti law, especially in the drunk driving context, is contained in *People* v. *Komatsu* (1989) 212 Cal.App.3d Supp. 1, 4-5 [261 Cal.Rptr. 681]. There, the appellate division of the Ventura County Superior Court affirmed a drunk driving conviction of a man who was found at night, sleeping and obviously intoxicated, in the passenger seat of a car

ineffective assistance of counsel grounds. Trial counsel for the defendant had failed to object to the admission of the extrajudicial confession of the defendant that he had been the driver of a pickup truck which had, apparently, been driven into a telephone pole near a market in which the defendant, obviously intoxicated, was located. Even though the truck was registered to him, there were other people in the immediate area when the police arrived, albeit none in the vehicle. Because of the possibility that one of them might have just as easily been the driver, the court (relying substantially on *Nelson*) found a failure to independently establish the corpus delicti.

But by relying on *Moreno*, respondent shoots himself in the proverbial foot. We quote a passage from that opinion in which the court distinguishes the facts before it from other possible scenarios: "While . . . mere proximity to the vehicle is not sufficient, it is certainly a factor which can properly be considered; people in proximity to a vehicle are more likely to have some connection to the vehicle, whether driver or passenger, than people located at some distance away. *Thus, when it is established by competent evidence that no one in the reasonable vicinity except the suspect acknowledges having been the driver of the car and the suspect has some demonstrable connection with the vehicle, it then becomes a reasonable inference from circumstantial evidence that the suspect was, in fact, the driver.*" (*Moreno, supra*, 188 Cal.App.3d at pp. 1188-1189, italics added.)

Precisely so here. Not one, but two, law enforcement officers testified that, enroute to this "desolate" Bethel Island location, they saw no other pedestrians and no other vehicles. No other possible driver of the car was seen by either of them anywhere near the Nissan. Further, there were multiple circumstances establishing the requisite demonstrable connection between respondent and the Nissan: (1) the marsh mud that covered both him and the left front panel of the car, (2) the keys to the car that were in his pocket, (3) the lug nuts to the detached wheel, also in his pocket, and (4) the fact that the car was registered to a person living at his address. These circumstances in combination are clearly sufficient, indeed more than sufficient, to permit the reasonable inference to be drawn that respondent was the likely driver of the car. That establishes the necessary corpus delicti and that, in turn, would permit the admission of his extrajudicial statement to Deputy Blumberg that he was, indeed, the driver.

blocking a ramp onto Highway 101. The defendant was the only person in the vicinity of the car, had the keys to the car on his person, and the car was registered to a person with the same last name and address as the defendant. That court both distinguished *Nelson* (on the grounds that another possible driver was in the vicinity) and also opined that that case was "not consistent with current law regarding appellate review of corpus delicti findings." (*Id.* at p. Supp. 5.) We agree.

## IV.  DISPOSITION

The judgment is reversed and the case is remanded to the trial court for proceedings not inconsistent with this opinion.

Kline, P. J., and Ruvolo, J., concurred.