Filed 5/5/21  P. v. Gonsalves CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Butte)

----

| | |
|---|---|
| THE PEOPLE, | C087003 & C090796 |
| Plaintiff and Respondent, | (Super. Ct. No. CM036102) |
| v. | |
| LORAYNA PATRICIA GONSALVES, | |
| Defendant and Appellant. | |

Defendant Lorayna Patricia Gonsalves was convicted by jury of one count of first degree residential robbery (Pen. Code, §§ 211, 212.5, subd. (a))[1] and one count of home invasion robbery (§ 213, subd. (a)(1)(A)) based on the same conduct.  With respect to each count, the jury also found a principal was armed with a firearm (§ 12022, subd. (a)(1)) and defendant personally used a deadly weapon, i.e., a baseball bat

---

[1]      Undesignated statutory references are to the Penal Code.

1

(§ 12022, subd. (b)(1)). In a bifurcated proceeding, the trial court found defendant had one prior serious felony conviction (§ 667, subd. (a)), qualifying as a strike within the meaning of the three strikes law (§§ 667, subds. (b)-(i), 1170, subds. (a)-(d)), and for which she served a prior prison term (§ 667.5). Defendant was sentenced to serve an aggregate determinate term of 25 years in state prison.

Defendant appeals. In case No. C087003, she argues: (1) we must reverse her conviction for first degree residential robbery because that crime is a necessarily included offense of home invasion robbery; (2) the evidence is insufficient to support defendant's conviction for either count of robbery and is also insufficient to support the attached enhancements for personal use of a deadly weapon; (3) defendant's trial counsel provided constitutionally deficient assistance by failing to object to a certain question posed by the prosecutor to a witness who lived at the residence where the robbery occurred, the response to which supplied the only evidence that the victim had a small amount of money taken from him during the robbery; (4) the aforementioned question also amounted to prejudicial prosecutorial misconduct; (5) we must modify the judgment to stay one of defendant's weapon enhancements; and (6) we must remand the matter for a new sentencing hearing because Senate Bill No. 1393 (2017-2018 Reg. Sess.) (Senate Bill 1393) (Stats. 2018, ch. 1013, §§ 1, 2), giving the trial court discretion to strike five-year prior serious felony enhancements in the interest of justice, applies retroactively to cases not yet final on appeal.

While the appeal in C087003 was pending, the trial court recalled the sentence pursuant to section 1170, subdivision (d), and resentenced defendant in light of Senate Bill 1393, striking the five-year enhancement term in the interest of justice, and affirming the previous sentence in all other respects, resulting in an aggregate determinate term of 20 years in state prison. Defendant appeals from this judgment as well, arguing in case No. C090796 that we must also strike the one-year prior prison term enhancement because Senate Bill No. 136 (2019-2020 Reg. Sess.) (Stats. 2019, ch. 590, § 1),

2

eliminating such enhancements for defendant's prior crime, also applies retroactively to cases not yet final on appeal, and the abstract of judgment must be corrected to reflect the oral pronouncement thereof. We consolidated the appeals for purposes of argument and disposition.

We conclude the judgments entered against defendant must be reversed because she received constitutionally deficient representation at trial. As we explain more fully later in the opinion, defendant's trial counsel failed to object to inadmissible evidence that was the only evidence supporting an essential element of the crime of robbery. There is no conceivable tactical reason that could justify counsel's failure to object to this evidence. Nor are we persuaded by the Attorney General's argument that the failure was harmless. This conclusion obviates the need to address most of defendant's remaining claims in her consolidated appeals. We do, however, address her challenges to the sufficiency of the evidence in order to determine whether this case may be remanded to give the People the option of retrial. We conclude her convictions and enhancement findings are supported by substantial evidence. We also consider defendant's claim, conceded by the Attorney General, that she was improperly convicted of both a greater and lesser included offense in order to provide guidance on remand in the event the People do elect to retry her. We accept the concession. Defendant may not be convicted of both first degree residential robbery and home invasion robbery based on the same conduct. We shall remand the matter to the trial court for retrial if the People so elect within 30 days of the issuance of the remittitur.

FACTS

In November 2011, Y. lived in Chico with her boyfriend, V., and their two small children. V. sold illegal drugs, often carried cash on him, and seemed to enjoy opening his wallet in front of other people to display the money. As Y. explained, "he came from nothing" and "liked showing it off to people." On the night of the robbery, they had two guests at their apartment, R. and his wife. R., who would soon become the robbery

3

victim, was both a friend and a mechanic. He was at the apartment earlier in the day to help V. work on a car. He forgot his jacket when he left that afternoon. Returning in the evening to pick it up, he and his wife ended up staying to watch a movie.

The robbery unfolded as follows. Y. answered a knock at the door. Defendant, "a girl [she] had never seen in [her] life," was on the other side. Defendant asked for V., who came to the door. The two briefly spoke and defendant left. A short time later, Y. answered a second knock at the door. This time, there was a man on the other side. Y. recognized him as one of her brother's friends, so she let him come inside. The new arrival went into the kitchen and started talking to R., who was also in the kitchen. While Y. could not hear what they were saying, she later learned the man demanded money from R., causing her to believe the man mistook R. for her boyfriend. Y. then heard "pushing and shoving" coming from the kitchen, followed by a gunshot.

The sound of the gunshot brought additional people into the apartment. As Y. described the intruders, there were "several males" and "the girl that first came." Defendant entered the apartment with a metal baseball bat. Her companions entered demanding: "Where's the money? Where's the money?" Y. immediately ran to protect her daughter, who was asleep in the living room. V. grabbed their son and took him into a bedroom. They escaped through a window with the help of R.'s wife, who used her body to block the door to the bedroom. As the intruders dispersed through the small apartment in search of money, defendant stood next to R. with the baseball bat. R. had been shot in his right hand and was lying on the kitchen floor. It appeared to Y. that defendant was ensuring that he did not get up. Not long after they arrived, defendant said to her companions: "There's nothing here. There's nothing here. Let's go." Following her direction, they left as quickly as they came.

The only evidence that anything of value was taken during these events came in the form of Y.'s answer to the following question: "And it was your understanding that

4

[R.] lost only a small amount of cash?" Y. answered: "Yeah." We place this answer in its proper context during the discussion portion of the opinion, to which we now turn.

## DISCUSSION

### I

### *Ineffective Assistance of Counsel*

Defendant contends her trial counsel provided constitutionally deficient assistance by failing to object to the following question: "And it was your understanding that [R.] lost only a small amount of cash?" As previously stated, Y.'s affirmative response supplied the only evidence anything of value was taken during the robbery. We agree counsel's failure to object to this question amounted to ineffective assistance of counsel.

### A.

### *Additional Background*

During Y.'s direct examination, the prosecutor asked: "At some point was someone able to get some money from [R.]?" Y. answered: "He told me only like $10." At this point, a hearsay objection was sustained, and the response was stricken. The prosecutor then asked Y. whether she remembered speaking with a detective and whether she was truthful with him. Y. answered both questions in the affirmative. When asked whether she remembered telling the detective "that [R.] had a few dollars taken from him," Y. responded: "No, I don't remember that." The prosecutor then moved on to other aspects of the robbery. A short time later, the prosecutor ended the direct examination with the question at issue here: "And it was your understanding that [R.] lost only a small amount of cash?" Y. answered: "Yeah." Defense counsel did not object.

### B.

### *Analysis*

A criminal defendant has the right to the assistance of counsel under both the Sixth Amendment to the United States Constitution and article I, section 15, of the California

5

Constitution. (*People v. Ledesma* (1987) 43 Cal.3d 171, 215.) This right "entitles the defendant not to some bare assistance but rather to *effective* assistance. [Citations.] Specifically, it entitles him [or her] to 'the reasonably competent assistance of an attorney acting as his [or her] diligent conscientious advocate.' [Citations.]" (*Ibid.*) The burden of proving a claim of ineffective assistance of counsel is squarely upon the defendant. (*People v. Camden* (1976) 16 Cal.3d 808, 816.) " 'In order to demonstrate ineffective assistance of counsel, a defendant must first show counsel's performance was "deficient" because his [or her] "representation fell below an objective standard of reasonableness . . . under prevailing professional norms." [Citations.] Second, he [or she] must also show prejudice flowing from counsel's performance or lack thereof. [Citation.] Prejudice is shown when there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." ' " (*In re Harris* (1993) 5 Cal.4th 813, 832-833; *Strickland v. Washington* (1984) 466 U.S. 668, 687 [80 L.Ed.2d 674, 693].)

"[R]obbery is the 'felonious taking of personal property in the possession of another, from his [or her] person or immediate presence, and against his [or her] will, accomplished by means of force or fear.' (§ 211.) First degree residential robbery is robbery perpetrated in an 'inhabited dwelling house.' (§ 212.5, subd. (a).) Home invasion robbery is first degree residential robbery committed 'in concert' with two or more other people. (§ 213, subd. (a)(1)(A).)" (*People v. Hutchinson* (2018) 20 Cal.App.5th 539, 550 (*Hutchinson*).) Thus, both of defendant's robbery convictions required proof that a taking of personal property occurred.[2]

---

**2** As we explain later in this opinion, because first degree residential robbery is a lesser included offense of home invasion robbery, defendant should not have been convicted of both offenses.

Defendant argues her trial counsel's failure to object to the question regarding Y.'s "understanding" that R. lost a small amount of cash during the robbery fell below an objective standard of reasonableness because the question was objectionable for several reasons and elicited the only evidence supporting an essential element of robbery. The heart of defendant's problem with the challenged question is that it lacked any foundation for Y. having personal knowledge that a taking occurred, as opposed to her having learned about it from R., whose statements in that regard were inadmissible hearsay.[3] We agree.

Subject to an exception for expert witnesses not applicable here, "the testimony of a witness concerning a particular matter is inadmissible unless he [or she] has personal knowledge of the matter." (Evid. Code, § 702, subd. (a).) "Against the objection of a party, such personal knowledge must be shown before the witness may testify concerning the matter" and "may be shown by any otherwise admissible evidence, including his [or her] own testimony." (*Id.*, subds. (a) & (b).)

---

[3] Defendant also argues the question was leading. "A 'leading question' is a question that suggests to the witness the answer that the examining party desires." (Evid. Code, § 764.) Leading questions "may not be asked of a witness on direct or redirect examination" except in "special circumstances where the interests of justice otherwise require." (Evid. Code, § 767, subd. (a).) The question, "And it was your understanding that [R.] lost only a small amount of cash?" plainly suggested the desired answer was that this was Y.'s understanding. However, one of the special circumstances in which leading questions are allowed on direct examination is when the question is " 'necessary to stimulate or revive [the witness's] recollection.' [Citations.]" (*People v. Collins* (2010) 49 Cal.4th 175, 215.) Here, Y. testified that she did not remember telling the detective that R. had a few dollars taken from him. Accordingly, leading questions concerning those prior statements were permissible. (*Ibid.* [leading questions seeking to revive witness's recollection of prior conversation with detective permissible on direct examination].) The prosecutor's question about her understanding that R. lost a small amount of money during the robbery is arguably about her prior statement to the detective, i.e., "And it was your understanding [at the time you spoke to the detective] that [R.] lost only a small amount of cash?" Thus, we cannot conclude an objection on leading grounds would have been properly sustained.

Here, defendant's trial counsel did not object to the question, so the prosecutor was not called upon to establish Y.'s personal knowledge. It is this failure to object that must be assessed as either reasonable or unreasonable. Based on the totality of Y.'s testimony, it is apparent that she did not have personal knowledge of what transpired between R. and the man who shot him in the kitchen except to the extent that she heard the sounds of an argument and scuffle followed by a gunshot. R. later told her that he lost a small amount of money during these events. Based on Y.'s testimony, she did not witness the taking herself.

However, Y.'s testimony is not the only way to show she had personal knowledge of the taking. Other admissible evidence on the matter would also suffice. (Evid. Code, § 702, subd. (b).) While no such evidence was offered, none was called for because no objection was made by defense counsel. But if the prosecution possessed such evidence, and defense counsel knew of its existence, the failure to object would not have been unreasonable because such an objection would have been properly overruled. On the other hand, if the prosecution was not prepared to establish Y.'s personal knowledge by other means, we perceive no rational tactical purpose for failing to object. Indeed, Y.'s response to the challenged question supplied the only evidence of an essential element of robbery. (See, e.g., *People v. Moreno* (1987) 188 Cal.App.3d 1179, 1190-1191 (*Moreno*) [no conceivable tactical reason for defense counsel's failure to object to inadmissible evidence that was "the only evidence the prosecution was prepared to offer" to establish corpus delicti].)

The Attorney General argues Y.'s prior statement to the detective would have established a taking occurred. This argument is made in connection with arguing a lack of prejudice, but it is also relevant to deficient performance because Y.'s prior statement is hearsay and must also be supported by personal knowledge in order to be admissible. (*People v. Cortez* (2016) 63 Cal.4th 101, 123-124 [personal knowledge requirement also applies to hearsay].) Thus, if Y.'s prior statement about R. having money taken from him

during the robbery was supported by personal knowledge, and was "otherwise admissible" (Evid. Code, § 702, subd. (b)), a rational trier of fact could have concluded she continued to possess such knowledge at the time of trial and an objection to her testimony on these grounds would have been properly overruled. (*Cortez*, at p. 124 [personal knowledge objection must be overruled if there is evidence from which a rational trier of fact could find the witness accurately perceived and remembered the events].)

The Attorney General does not offer any argument regarding the admissibility of Y.'s prior statement to the detective, but rather simply assumes it would have been admitted had an objection to Y.'s testimony been made. For our purposes, we may also assume, without deciding the matter, that the statement was otherwise admissible as a prior inconsistent statement. But such a conclusion would not end the inquiry because there is no indication in the statement itself, or elsewhere in the record, that Y. possessed personal knowledge that a taking occurred when she spoke to the detective. Much like her trial testimony, Y. provided many statements to the detective regarding the events occurring in the apartment that night. She obviously had personal knowledge regarding most of these events. Unlike her trial testimony, Y. stated she saw the start of the altercation in the kitchen. The police report states: "She said the subject got close to [R.] and then she saw him push [R.] She told me that the subject pushed [R.] and they began fighting and she heard three gunshots." At that point, as Y. described in her trial testimony, defendant and her confederates came into the apartment. Y. then described their conduct. Nowhere in this description of events did Y. say she saw anyone take money from R. Much like her trial testimony, it was in response to a question from the detective regarding whether anything was taken during these events that Y. "said they only got a few dollars from [R.]" Y. did not say how she knew a taking occurred. Her trial testimony, however, makes clear she found out from R. after the fact.

9

Given this state of the evidence, we cannot conclude Y.'s specific statement to the detective that R. had money taken from him was supported by personal knowledge. The Attorney General does not point us to any other evidence from which this personal knowledge requirement could have been met in response to a proper objection from defense counsel. Because Y.'s trial testimony and her prior statement to the detective regarding R. having money taken from him are both unsupported by any evidence she had personal knowledge such a taking occurred, and because "these statements appear to be the only evidence the prosecution was prepared to offer to satisfy its burden of establishing [the taking element of the robbery charges], we can conceive of no tactical reason whatsoever which might have dictated trial counsel's decision not to object." (*Moreno*, *supra*, 188 Cal.App.3d at p. 1191.)

Turning to prejudice, having concluded the alternative means advanced by the Attorney General for proving a taking, i.e., Y.'s prior statement to the detective, was also unsupported by any evidence Y. possessed personal knowledge such a taking occurred, we must further conclude defense counsel's failure to object resulted in prejudice. Stated simply, without evidence establishing an essential element of the crime of robbery, there is at least a reasonable probability that, but for defense counsel's failure to object to this evidence, the result of the proceeding would have been different.

The judgments entered against defendant must be reversed because she received constitutionally deficient representation at trial.

## II

### *Sufficiency of the Evidence*

We now turn to defendant's challenges the sufficiency of the evidence to support her robbery convictions, and the attached enhancements for personal use of a deadly weapon, in order to determine whether or not retrial is permissible. We conclude the evidence adequately supports both convictions as well as the attached enhancement findings.

10

## A.

### *The Robbery Convictions*

Defendant argues the evidence is insufficient to support her robbery convictions because there is no substantial evidence that something of value was taken from the victim's person or immediate presence, or that such a taking occurred in an inhabited dwelling. She is mistaken.

The standard of review is well-settled: "When reviewing a challenge to the sufficiency of the evidence, we ask ' "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." ' [Citation.] Because the sufficiency of the evidence is ultimately a legal question, we must examine the record independently for ' "substantial evidence—that is, evidence which is reasonable, credible, and of solid value" ' that would support a finding beyond a reasonable doubt. [Citation.]" (*People v. Banks* (2015) 61 Cal.4th 788, 804.)

As previously stated, both first degree residential robbery and home invasion robbery require proof of a "felonious taking of personal property in the possession of another, from his [or her] person or immediate presence, and against his [or her] will, accomplished by means of force or fear" (§ 211), and committed in an "inhabited dwelling house" (§ 212.5). Home invasion robbery also requires proof that the robbery was committed "in concert" with two or more other people (§ 213, subd. (a)(1)(A)). (See *Hutchinson*, *supra*, 20 Cal.App.5th at p. 550.)

Defendant, who was convicted of these crimes as an aider and abettor, does not challenge the sufficiency of the evidence to support her role as an accomplice in the criminal enterprise, so we decline to recite those elements here. Nor does she challenge the sufficiency of the evidence to support a conclusion that a small amount of cash was

11

taken from R.,[4] against his will, by means of force or fear, or that defendant joined with at least two other people. Her argument is limited to challenging the sufficiency of the evidence to support a conclusion that the taking was (1) from R.'s person or immediate presence, and (2) committed in an inhabited dwelling house. We conclude each element is adequately supported by substantial evidence.

**1.**

*Taking from R.'s Person or Immediate Presence*

Viewed in the light most favorable to the judgment, as we must, the evidence supports the following series of events. Defendant knocked on the apartment door to make sure V., the intended target of the robbery, was home. After briefly speaking with V., defendant left and armed herself with a baseball bat. She then returned to the apartment with several others, one of whom was armed with a firearm. The latter person knocked on the door and was allowed inside. In the kitchen, he demanded money from R., whom he apparently mistook for V. A struggle ensued, during which R. was shot in the hand and ended up on the kitchen floor. Defendant and the others then came into the apartment to provide backup. While defendant stood guard over R. with the baseball bat, the others searched the apartment. When defendant realized the money they had come to forcibly take was not there, she told the others it was time to go. The intruders then departed, but not before one of them took a small amount of cash from R.

---

[4]    As we have explained in detail, defendant successfully argues that the only evidence R. lost anything of value should not have been admitted, and her trial counsel provided constitutionally deficient assistance by failing to object to the admission of this evidence. However, this conclusion does not undermine the sufficiency of the evidence supporting this element of robbery. As our Supreme Court has explained, " ' "[i]t is settled law that incompetent testimony, such as hearsay or conclusion, if received without objection takes on the attributes of competent proof when considered upon the question of sufficiency of the evidence to support a finding." ' [Citations.]" (*People v. Panah* (2005) 35 Cal.4th 395, 476.)

12

Although the precise circumstances of the taking from R. are not known, the most reasonable explanation is the person who shot him took the money during the struggle in the kitchen. Defendant does not dispute this would qualify as a taking from R.'s person or immediate presence. "The generally accepted definition of immediate presence . . . is that ' "[a] thing is in the [immediate] presence of a person, in respect to robbery, which is so within his [or her] reach, inspection, observation or control, that he [or she] could, if not overcome by violence or prevented by fear, retain . . . possession of it." ' " (*People v. Hayes* (1990) 52 Cal.3d 577, 626-627.) Taking money from a person during a struggle over control of that money certainly qualifies.

Instead, relying primarily on *People v. Tripp* (2007) 151 Cal.App.4th 951, defendant argues this explanation for how the money was taken is " 'mere speculation,' " and therefore insufficient to support the jury's finding of a taking from R.'s person or immediate presence. Defendant's reliance on *Tripp* is misplaced. There, the Court of Appeal held the evidence was insufficient to support a conclusion the defendant knew the small amount of loose white powder on a nightstand in his bedroom was methamphetamine where there was no evidence he was under the influence of the substance, no evidence of methamphetamine paraphernalia or packaging either on the defendant's person or near the substance on the nightstand, no evidence the defendant used methamphetamine generally, no evidence suggesting consciousness of guilt, and two other adults, one of whom had a history of methamphetamine use, also lived in the residence. (*Id*. at p. 957.) The court concluded "there was nothing other than the methamphetamine's presence on the nightstand in his room and that was not enough." (*Ibid*.) Acknowledging this evidence "certainly raised a strong suspicion" that the defendant "*probably knew*" the substance was methamphetamine, the court explained such suspicion was "insufficient as a basis from which the jury could infer beyond a reasonable doubt that he *did know*." (*Id*. at pp. 958-959.)

We address and reject defendant's argument that the taking perhaps occurred outside the apartment immediately below. For present purposes, we simply note the evidence supports a reasonable inference the taking occurred in the apartment. Thus, even if we were to agree with her assertion that the evidence supports only a strong suspicion money was taken from R. during the struggle in the kitchen, Y.'s testimony that R. lost money during the events in the apartment supports a reasonable inference that something belonging to R. inside the apartment contained money, e.g., the jacket he came back to retrieve, and one of the intruders took that money before leaving. Even if the taken money was in the living room, and not on R.'s person or beside him in the kitchen, it was nevertheless in his immediate presence for purposes of robbery. " 'The zone of immediate presence [for purposes of robbery] includes the area "within which the victim could reasonably be expected to exercise some physical control over his property." ' [Citations.]" (*People v. Abilez* (2007) 41 Cal.4th 472, 507.) This includes adjacent rooms. (*Ibid.* [where victim was killed in her bedroom, "taking her car or items from another bedroom would qualify" as being within her immediate presence for purposes of robbery]; see also *People v. Holt* (1997) 15 Cal.4th 619, 675.)

The evidence is sufficient to support the jury's conclusion that money was taken from R.'s person or immediate presence.

**2.**

***Committed in an Inhabited Dwelling House***

Defendant's argument that the evidence does not support a reasonable conclusion the taking occurred in an inhabited dwelling house need not detain us long. Based on her "supposed statement" inside the apartment telling her cohorts to leave because, as she put it, "[t]here's nothing here," defendant argues "the only logical location" for any taking to have occurred "would be . . . outside of the apartment; e.g., presumably in or about the vehicle that [R.] had been working on earlier that day." She acknowledges this is

14

speculative, but argues it is no more speculative than the conclusion a taking occurred inside the apartment.  Not so.

The conclusion that a taking occurred inside the apartment is supported by Y.'s testimony regarding a series of events that occurred *inside the apartment*, including R. being shot in the kitchen after the shooter demanded money, accompanied by her further testimony that R. "lost . . . a small amount of cash."  A reasonable inference arises that he lost that money during these events and that it was taken from him inside the apartment.

The evidence is sufficient to support the jury's conclusion that money was taken from R. inside an inhabited dwelling house.

**B.**

### *Personal Use of a Deadly Weapon*

Defendant also argues the evidence is insufficient to support her enhancement for personal use of a deadly weapon because there is no substantial evidence she displayed the baseball bat in a menacing manner.  We disagree.

Section 12022, subdivision (b)(1) provides:  "A person who personally uses a deadly or dangerous weapon in the commission of a felony or attempted felony shall be punished by an additional and consecutive term of imprisonment in the state prison for one year, unless use of a deadly or dangerous weapon is an element of that offense."

For this enhancement to apply, the jury must find "that, during the crime or attempted crime, the defendant himself or herself intentionally displayed in a menacing manner or struck someone with an instrument capable of inflicting great bodily injury or death."  (*People v. Wims* (1995) 10 Cal.4th 293, 303, disapproved on another point in *People v. Sengpadychith* (2001) 26 Cal.4th 316, 325-326.)

Defendant does not dispute she was armed with a baseball bat or argue the bat was incapable of inflicting great bodily injury or death.  Instead, she argues there was no evidence of a menacing display of the weapon.  On the contrary, defendant stood over R. with the bat while her confederates searched the apartment for money.  While she held

15

the bat pointing down, as opposed to holding it "up" and "ready to hit," her presence with the bat over R., who was lying on the kitchen floor after having been shot, indicated to Y. that defendant was standing guard over R. with the bat.  A reasonable inference arises that she did so in order to intimidate R. and facilitate the completion of the offense.  By doing so, she put the bat to "use" within the plain meaning of section 12022, subdivision (b).  (See *People v. Granado* (1996) 49 Cal.App.4th 317, 325 ["as a matter of plain English," firearm "use" supported by substantial evidence where the defendant "displayed a firearm in order to facilitate the commission of an underlying crime"].)

The evidence is sufficient to support the jury's finding that defendant personally used a deadly weapon in the commission of the robbery.

### III

### *Necessarily Included Offense*

Finally, in the event the People elect to retry defendant, in order to provide guidance to the trial court, we also express agreement with defendant's contention that she was improperly convicted of both first degree residential robbery and home invasion robbery based on the same conduct because the former crime is necessarily included within the latter crime.  This contention is properly conceded by the Attorney General.

"Multiple convictions may not be based on necessarily included offenses based on one criminal act.  [Citation.]  An offense is necessarily included within another if the statutory elements of the greater offense include all the elements of the lesser offense.  [Citation.] . . . [R]obbery is the 'felonious taking of personal property in the possession of another, from his [or her] person or immediate presence, and against his [or her] will, accomplished by means of force or fear.'  (§ 211.)  First degree residential robbery is robbery perpetrated in an 'inhabited dwelling house.'  (§ 212.5, subd. (a).)  Home invasion robbery is first degree residential robbery committed 'in concert' with two or more other people.  (§ 213, subd. (a)(1)(A).)"  (*Hutchinson*, *supra*, 20 Cal.App.5th at p. 550.)  Thus, the statutory elements of home invasion robbery include all the elements of

16

residential robbery, the only difference being the additional "in concert" element qualifying the home invasion robber for additional punishment.

Because the same conduct supports defendant's conviction for each offense, and the crime of first degree residential robbery is necessarily included in the crime of home invasion robbery, defendant may not be convicted of both offenses on retrial.

DISPOSITION

The judgments entered against defendant in C087003 and C090796 are reversed and the matter is remanded to the trial court for retrial if the People so elect within 30 days of the issuance of the remittitur.

Based on our resolution of the ineffective assistance of counsel claim, upon issuance of remittitur, the clerk of this court is directed to give the required notice to the State Bar of California pursuant to Business and Professions Code section 6086.7, subdivision (a)(2), and to defendant's trial counsel pursuant to Business and Professions Code section 6086.7, subdivision (b), and California Rules of Court, rule 10.1017.

                                                  /s/                    

                                                  HOCH, J.

We concur:


/s/
RAYE, P. J.


/s/
KRAUSE, J.

17